1   JOSHUA D.N. HESS (SBN 244115)
joshua.hess@dechert.com
2   DECHERT LLP
One Maritime Plaza, Suite 2300
3   San Francisco, California 94111-3513
Telephone:    (415) 262-4500
4   Facsimile:    (415) 262-4555

5   DENNIS H. HRANITZKY (admitted *pro hac vice*)
dennis.hranitzky@dechert.com
6   DECHERT LLP
1095 Avenue of the Americas
7   New York, New York 10036
Telephone:   (212) 641-5647
8   Facsimile:   (212) 698-3599

9   Attorneys for Plaintiff
NML Capital, Ltd.
10

11                        UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13

14   NML CAPITAL, LTD.,                        Case No.  C 12-80185 JSW (MEJ)

15                    Plaintiff,               **PLAINTIFF NML CAPITAL, LTD.'S
                                               MOTION FOR RELIEF FROM
16   v.                                        NONDISPOSITIVE ORDER OF
                                               MAGISTRATE JUDGE DATED
17   THE REPUBLIC OF ARGENTINA,                FEBRUARY 21, 2013 (DOCKET # 31)**

18                    Defendant.               **[Fed. R. Civ. P. 72(a); Local Rule 72-2]**

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Federal Rule of Civil Procedure 72(a), Northern District of California Civil

2    Local Rule 72-2, and 28 U.S.C. § 636(b)(1)(A), Plaintiff NML Capital, Ltd. ("NML") objects to

3    Magistrate Judge James's Discovery Order (D.E. 31) ("Order") denying NML's motion to

4    compel discovery from Chevron Corporation ("Chevron") and limiting NML's Subpoena to

5    Chevron to exclude information concerning Yacimientos Petroliferos Fiscales S.A. ("YPF").

6    NML requests that the Court reverse the Order and remand to apply the proper legal standards.

7    **OBJECTION NO. 1:**

8    The Magistrate Judge held at p. 2, lines 7-22 of the Order that "NML's allegations

9    regarding YPF's relationship to the Republic are insufficient as a matter of law to overcome the

10   presumption that YPF is a separate juridicial [sic] entity for purposes of asset discovery on an

11   alter-ego theory" based on the presumption articulated in *First Nat'l City Bank v. Banco Para el*

12   *Comercio Exterior de Cuba (Bancec)*, 462 U.S. 611, 627 (1983), that "[d]uly-created

13   instrumentalities of a foreign state are to be accorded a presumption of independent status" for

14   purposes of judgment liability.  In other words, the Magistrate Judge determined that because

15   NML was unable to establish conclusively at this preliminary stage that YPF—or any other

16   Argentine instrumentality—was the alter ego of Argentina to establish judgment liability, it could

17   not seek discovery from a non-sovereign third party under the Federal Rules to establish that very

18   fact.  This heretofore unheard of hurdle for asset discovery defies logic, is plainly erroneous, and

19   is inconsistent with the Magistrate Judge's—and this Court's—prior decisions in this case.

20   **BASIS FOR OBJECTION:**

21   The Magistrate Judge erroneously conflated the standard for establishing ***the merits*** of an

22   alter ego claim aimed at a sovereign instrumentality (when a sovereign's creditor hauls an alleged

23   alter ego into court under the Federal Sovereign Immunities Act ("FSIA")) with the standard for

24   merely seeking ***discovery*** that is likely relevant to the merits of such a claim from a non-sovereign

25   third party.  Although a sovereign instrumentality enjoys a presumption of independent status for

26   purposes of ***liability***, and for ***attachment*** efforts aimed at it, *see Bancec*, 462 U.S. 611, 627

27   (1983), neither the FSIA nor the presumption of independence are even relevant in the context of

28   ***discovery*** when it is sought from a non-sovereign third party.  Indeed, the Order cites to no case

1   that supports its conclusion that NML must overcome the presumption of a sovereign

2   instrumentality's independence for attachment liability purposes in order to obtain discovery from

3   a non-sovereign third party about that instrumentality's relationship with the sovereign.[1]

4        Both this Court and the Second Circuit have already determined that sovereign immunity

5   has no bearing on discovery issued to a non-sovereign third party.  Indeed, in its November 13,

6   2012 Order (the "November 13 Order"), affirming an earlier decision by the Magistrate Judge,

7   this Court stressed that the FSIA does **not** apply to discovery issued to a non-sovereign entity and

8   that there is no need, in such a context, to "protect foreign sovereigns from the burdens of

9   litigation, including the costs and aggravations of discovery."  November 13 Order (D.E. 24) at 2;

10  *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 203, 208-10 (2d Cir. 2012).

11  Inexplicably, and in spite of this prior holding, the Magistrate Judge denied the discovery issued

12  to Chevron (a non-sovereign third party) seeking information about a sovereign instrumentality,

13  YPF, by improperly applying the protections that the FSIA and federal common law afford to

14  sovereign instrumentalities.  *See* Order at 3.  The Order makes no effort to harmonize the

15  conflicting holdings—that sovereign immunity does not apply to limit post-judgment discovery

16  sought from non-sovereign third parties, but that the presumption of separateness afforded to

17  sovereign instrumentalities somehow does apply when that discovery involves purported alter

18  egos of a sovereign.  That is because it cannot.

19       The reasoning of *EM* and this Court's November 13 Order instruct that when discovery

20  issued to a non-sovereign merely seeks information **about** a sovereign instrumentality, whatever

21  legal protections that instrumentality enjoys by virtue of its sovereign status have no bearing.  In

22

---

23  [1]  The cases cited in the Order did not involve discovery at all, let alone discovery of a non-
24  sovereign third party, as to which the FSIA does not apply.  Rather, the cited cases applied
    the *Bancec* presumption to determine whether **attachment** of sovereign instrumentalities
25  under the FSIA was proper, which is not at issue here.  *See Pravin Banker Associates, Ltd.
    v. Banco Popular del Peru*, 9 F. Supp. 2d 300, 305 (S.D.N.Y. 1998) (holding judgment
26  creditor of Peruvian instrumentality had not met *Bancec's* test for an alter ego
    determination in an **attachment** proceeding); *LNC Investments, Inc. v. Republic of
27  Nicaragua*, 115 F. Supp. 2d 358 (S.D.N.Y. 2000) (applying *Bancec* presumption of
    independence before allowing **attachment** of sovereign instrumentality's assets).

28

DECHERT LLP
ATTORNEYS AT LAW
SAN FRANCISCO

- 2 -        PLAINTIFF'S OBJECTION TO FEBRUARY
             21, 2013 DISCOVERY ORDER   C 12-80185

1    that context, the question is not whether the plaintiff can ***establish*** (prior to discovery) an alter

2    ego allegation, but rather is, under the broad scope of post-judgment discovery afforded under the

3    Federal Rules of Civil Procedure, whether the information sought is relevant and not unduly

4    burdensome. *See Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1073-74 (9th Cir. 2002); *see*

5    *also* Fed. R. Civ. P. 69(a)(2) (authorizing judgment creditor to "obtain discovery from any

6    person—including the judgment debtor—as provided in these rules"); Fed. R. Civ. P. 26(b)(1)

7    (party may obtain discovery regarding "any matter, not privileged, that is relevant to the claim or

8    defense of any party").[2]

9         In contrast to the unsupported and erroneous standard set forth in the Order, the

10   appropriate legal procedure governing alter ego discovery involving sovereign instrumentalities

11   has been established in numerous cases.  In *Flatow*, the Ninth Circuit affirmed a denial of

12   attachment under *Bancec* only ***after*** the district court had permitted the plaintiff to take discovery

13   of the sovereign instrumentality itself to establish an alter ego relationship with the Iranian

14   government.  308 F.3d at 1068-69, 1074.  Moreover, in addressing a dispute over the scope of

15   discovery in that case, the Ninth Circuit did not apply the FSIA or the *Bancec* presumption, but

16   instead weighed the relevance of the discovery against its burden under Federal Rule 26—just as

17   in any discovery dispute.  *Id.* at 1074-75.  The Order turns the procedure endorsed by the Ninth

18   Circuit in *Flatow* on its head and is reversible on that ground alone.  Similarly, in *Magnaleasing,*

19   *Inc. v. Staten Island Mall,* the court held that discovery should be permitted under the Rules when

20   "the relationship between the judgment debtor and the non-party is ***sufficient to raise a***

21   ***reasonable doubt***" about whether the non-party is truly a separate entity.  76 F.R.D. 559, 562

22   (S.D.N.Y. 1977) (emphasis added).  *See also Compaq Computer Corp. v. Ergonome Inc.*, 387

23   F.3d 403, 412-14 (5th Cir. 2004) (recognizing propriety of effort "to discover facts that would

24   support a finding of alter ego" and upholding sanctions against party for resisting such

25

---

26
27   [2]    *See also EM*, 695 F.3d at 204 (enforcing subpoenas that defined "'Argentina' broadly to
        include Argentina's 'agencies, ministries, instrumentalities, political subdivisions [and]
        employees'"—without considering whether such entities were Argentina's alter egos).

28

1    discovery); *Strick Corporation v. Thai Teak Products Company*, 493 F. Supp. 1210, 1217 (E.D.

2    Pa. 1980) (judgment creditor must make "***some showing*** of the relationship that exists between

3    the judgment debtor and the third party" to obtain alter ego discovery) (emphasis added).  This

4    liberal standard is a far cry from that improperly imposed by the Order, which requires NML to

5    rebut a heavy presumption of independence before it has access to any facts to do so.

6           Finally, the Order overlooks the fact that discovery concerning YPF is relevant even if

7    YPF were never found to be Argentina's alter ego.  YPF has been expropriated from its private

8    owners by Argentina in order to carry out the Republic's energy policy goals and to develop its

9    vast state energy resources.  As NML learns more about Chevron's work with YPF, it will

10   increase its overall understanding of how Argentina's energy sector operates, what ministries and

11   entities control its assets, and how energy products are developed and sold—all of which

12   eventually may lead to the discovery of attachable Argentine property.  That is true even if NML

13   never establishes that YPF is Argentina's alter ego and thus able to attach YPF's assets

14   themselves.  This is consistent with "the freedom to make a broad inquiry" that judgment

15   creditors, such as NML, are permitted to have under the Federal Rules.  *Ryan Inv. Corp. v.*

16   *Pedregal de Cabo San Lucas*, No. C 06-3219 JW (RS), 2009 WL 5114077, at *1 (N.D. Cal. Dec.

17   18, 2009).

18           **OBJECTION NO. 2:**

19           The Magistrate Judge held at p. 2, lines 17-20, that "the scope of discovery that may be

20   obtained from third parties by a judgment creditor is limited to that necessary for 'the purposes of

21   discovering any concealed or fraudulently transferred assets' of the judgment debtor.

22   *Magnaleasing*, [76 F.R.D. at 561]."  To the extent the Magistrate Judge ruled that a judgment

23   creditor cannot obtain discovery about an alleged alter ego's transactions and relationships with a

24   judgment debtor and can only discover information about actual asset transfers, the decision both

25   misconstrues the holding of *Magnaleasing* and is contrary to law.

26           **BASIS FOR OBJECTION:**

27           The Magistrate Judge erred in relying on a 1977 Southern District of New York

28   decision—rather than the recent, contrary Second Circuit opinion in *EM* that necessarily

- 4 -                PLAINTIFF'S OBJECTION TO FEBRUARY
21, 2013 DISCOVERY ORDER   C 12-80185

1    controls—for the suggestion that post-judgment discovery from a third party "is limited to that

2    necessary for 'the purpose of discovering any concealed or fraudulently transferred assets' of the

3    judgment debtor."  Order at 2.[3]  In making that statement, the court misconstrued *Magnaleasing*,

4    but regardless, *EM* made it perfectly clear that post-judgment discovery is not so limited.  In *EM*,

5    which arose in the exact same factual context as the issue before this Court, the Second Circuit

6    endorsed NML's taking of discovery from a third party concerning Argentina's assets **and** its

7    activities in capital markets.  *EM*, 695 F.3d at 203 (noting that the underlying discovery upheld

8    aimed to learn information from third parties not only about Argentina's actual assets but also "to

9    gain an understanding of Argentina's 'financial circulatory system.'").  Further, the subpoenas

10   that the Second Circuit allowed to go forward in *EM* "define[d] 'Argentina' broadly to include

11   Argentina's 'agencies, ministries, instrumentalities, political subdivisions [and] employees'"

12   without any limitation depending on whether the entities were Argentina's alter egos.  *Id.* at 204.

13        Just as it was relevant to NML's post-judgment enforcement efforts to inquire into both

14   Argentina's assets and its activities in the capital markets (including those of its "agencies,

15   ministries, instrumentalities, political subdivisions [and] employees")—discovery that was

16   endorsed by the Second Circuit in *EM*—it is relevant for NML to seek information concerning

17   assets and activities of Argentina (including YPF and other agencies, instrumentalities, and

18   political subdivisions) in the hydrocarbon market.

19                                                          Respectfully submitted,

20   Dated: March 7, 2013                              DECHERT LLP

21

22                                                     By:  */s/ Joshua D. N. Hess*
                                                           Joshua D. N. Hess
23                                                         Dennis H. Hranitzky

24                                                         Attorneys for Plaintiff
                                                           NML Capital, Ltd.
25

26   _____

27   [3]    In its November 13 Order (D.E. 24) the Court relied extensively on the Second Circuit's
            decision in *EM*.
28