UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NML CAPITAL, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendants, | Case No. 12-mc-80185-JSW<br><br>**ORDER RESOLVING MOTION FOR RELIEF FROM NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE DATED FEBRUARY 21, 2013**<br><br>Re: Docket No. 32 |

Now before the Court for consideration is the motion for relief from Magistrate Judge James discovery order dated February 21, 2013 (hereinafter "objections"), filed by Plaintiff, NML Capital, Ltd. ("NML"). The Court has reviewed the papers filed by all interested parties, relevant legal authority, and the record in this case. For the reasons set forth herein, the Court hereby overrules NML's objections, and it affirms Magistrate Judge James' ruling.

**BACKGROUND**

This dispute arises out of a subpoena issued by NML, on July 11, 2012, to non-party Chevron Corporation ("Chevron"). NML issued the subpoena as part of its efforts to collect on a judgment it obtained against Defendant, The Republic of Argentina ("the Republic"). On August 7, 2012, the Republic moved to quash the subpoena on the basis that the subpoena violated its sovereign immunity and was prohibited under the Foreign Sovereign Immunities Act ("FSIA"). The Republic also argued that the subpoena was overbroad, because NML defined "Argentina" to include separate persons and corporate entities, including Energia Argentina S.A. ("ENARSA") and Yacimientos Petroliferos Fiscales S.A. ("YPF").

Magistrate Judge James denied the motion to quash. However, she limited the scope of the subpoena to the Republic, because NML did not present the requisite threshold evidence of an

alter-ego relationship between ENARSA and the Republic. (*See* Docket No. 9, Discovery Order dated October 17, 2012 ("First Discovery Order") at 3:13-22.) Judge James also ordered that "[i]f NML contends that discovery as to these entities should be permitted, the parties shall meet and confer and thereafter file a joint letter on this issue…." (*Id.* at 3:22-24.)

The Republic objected to the First Discovery Order, on the basis that Magistrate Judge James' ruling on the FSIA was erroneous. This Court affirmed. The Republic appealed. On December 23, 2014, the Ninth Circuit summarily affirmed this Court's Order, based on the United States Supreme Court's ruling in *Republic of Argentina v. NML Capital, Ltd.*, __ U.S. __, 134 S.Ct. 2250, 2256-58 (2014). (*See* Docket Nos. 24, 25, 41.)

In the interim, NML, the Republic, and Chevron engaged in further discussions about the scope of the subpoena, but they were not able to work out their differences. On January 25, 2013, NML and the Republic filed a letter brief, in which NML asked the Court to compel Chevron to produce documents relating to the Republic's "ministries, political subdivisions, agencies, instrumentalities, and alleged representatives and assigns," including YPF. (Docket No. 27-1, Letter Brief at 1.)

On February 21, 2013, Magistrate Judge James denied NML's motion to compel and denied the request to expand the scope of the subpoena to include any entities other than the Republic. (Docket No. 31, Discovery Order dated February 21, 2013 ("Second Discovery Order"), at 4:1-2.)

The Court shall address additional facts as needed in the analysis.

**ANALYSIS**

**A.     Standard of Review.**

The District Court may modify or set aside any portion of a magistrate's ruling on non-dispositive pre-trial motions found to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also, e.g., Grimes v. City and County of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). A ruling is clearly erroneous if the reviewing court, after considering the evidence, is left with the "definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

**B. The Court Affirms the Second Discovery Order.**

NML raises two objections to the Second Discovery Order: (1) Magistrate Judge James applied an incorrect legal standard regarding alter-ego status when she denied the motion to compel; and (2) Magistrate Judge James incorrectly ruled that a party can never obtain alter-ego discovery under Federal Rule of Civil Procedure 69. The Court addresses the latter objection first.

**1. The Court Overrules NML's Second Objection.**

NML objects to the Second Discovery Order, to the extent Magistrate Judge James found that discovery into alter-ego status is never proper. (Docket No. 32, Mot. at 19:25.) Rule 69 provides that "[i]n aid of the judgment or execution, the judgment creditor … may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).

Magistrate Judge James' ruling on the First Discovery Order recognizes that "[b]road post-judgment discovery in aid of execution is the norm," but that discovery in such circumstances is "constrained principally in that it must be calculated to assist in collecting on a judgment." (First Discovery Order at 1:22-27.) Magistrate Judge James also recognized that, upon a proper showing, discovery might be warranted on an alter-ego theory. (*Id.* at 3:13-24.)

The portion of the Second Discovery Order to which NML objects simply demonstrates that Magistrate Judge James recognized that, although a court may permit "broad" post-judgment discovery, it also should be mindful of the goal of such discovery, *i.e.* to locate "'any concealed or fraudulently transferred assets' of the judgment debtor." (Second Discovery Order at 2:17-19 (quoting *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D. N.Y. 1977)).)

The Court finds that Magistrate Judge James' ruling on this point was neither clearly erroneous nor contrary to law.

**2. The Court Overrules NML's First Objection.**

NML also argues that Magistrate Judge James erred by denying discovery into whether YPF is an alter-ego of the Republic. According to NML, Judge James applied the standard necessary to determine whether YPF is, in fact, the Republic's alter-ego, rather than a more lenient standard to determine whether NML should be permitted to obtain discovery on that issue.

The Court starts its analysis with the presumption that that YPF is a separate juridical entity, until facts show otherwise. *See, e.g., EM Ltd. v. Banco Central de La Republica Argentina*, 800 F.3d 78, 89 (2d Cir. 2015) ("*EM Ltd.*") ("the Supreme Court created a presumption that 'government instrumentalities established as juridical entities distinct from their sovereign should normally be treated as such'") (quoting *First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba (Bancec)*, 462 U.S. 611, 626-27 (1983)). Magistrate Judge James' ruling recognizes and adopts that principle. (Second Discovery Order at 3:9-10.)

In *Bancec*, the Supreme Court held that the presumption of separateness could be rebutted by a showing that: (1) an entity "is so extensively controlled by its owner that a relationship of principal and agent is created"; or (2) that it would create a "fraud or injustice" to recognize the entity's separate legal status. *Bancec*, 462 U.S. at 629. With respect to the first prong of the test, courts consider factors such as

> whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state.

*EM, Ltd.*, 800 F.3d at 91. With respect to the second prong, courts look at facts to suggest that the foreign sovereign state has abused the corporate form in some way. *Id.* at 95-96.

Courts have permitted discovery into alter-ego status, under Rule 69, "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing*, 76 F.R.D. at 562. In analogous circumstances, the Ninth Circuit and courts within this district have required a plaintiff to put forth evidence that may be less than a prima facie showing but must be more than a "hunch" or "bare allegations in the face of specific denials," in order to obtain jurisdictional discovery on alter-ego status. *See, e.g., Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995); *Teras Cargo Transport (America) LLC v. Cal Dive International (Australia) Pty. Ltd.,* No. 15-cv-03566-JSC, 2015 WL

1   6089276, at *8 (N.D. Cal. Oct. 16, 2015); *cf. Seijas v. Republic of Argentina*, 502 Fed. Appx. 19
2   (2nd Cir. 2012) (affirming district court decision to deny jurisdictional discovery, because facts
3   did not support a reasonable basis for assuming jurisdiction over Banco de la Nacion Argentina
4   based on alter-ego theory).

5        In the *Magnaleasing* case, the court found that certain portions of a confidential settlement
6   agreement between the judgment debtors and a third party should be produced to the plaintiff,
7   because there were facts sufficient to raise a reasonable doubt about the bona fides of asset
8   transfers. Those facts included a showing of identity of controlling shareholders of the non-party
9   and the judgment debtors, and a showing that that the non-party had prosecuted and financed the
10  judgment debtor's appeal on the merits of the litigation. *Id.*; *see also Trustees of North Florida*
11  *Operating Engineers Health and Welfare Fund v. Lane Crane Service, Inc.*, 148 F.R.D. 662, 664
12  (M.D. Fla. 1993) (finding Rule 69 discovery into relationship between non-party and judgment
13  debtor was warranted, based on deposition and affidavits presented in support of request).

14       In contrast, and although the court did not address the issue of jurisdictional discovery, in
15  *EM, Ltd.*, the court found that allegations in a complaint were insufficient to allege an alter-ego
16  relationship between the Republic and the Banco Central De La Republica Argentina ("BCRA").
17  The complaint in that case included allegations that the Republic permitted the President to
18  appoint officers of BCRA without Senate approval, that it removed BCRA governors who
19  supported the bank's independence, issued decrees that made it easier for the Republic to borrow
20  from the bank to repay debts to creditors other than the plaintiffs, and that the bank and the
21  Republic coordinated their activities to implement and inflationary monetary policy. 800 F.3d at
22  92-95. The court found that the allegations standing alone and taken together were insufficient to
23  show "that the Republic so extensively controlled BCRA's day-to-day operations as to transform
24  BCRA into the Republic's alter-ego." *Id.* at 94. The court also concluded that the plaintiffs had
25  not shown that the Republic used "BCRA's separate juridicial status to block plaintiffs'
26  enforcement attempts against [the Republic], or that [the Republic] has transferred *its* funds to
27  BCRA in order to shield them from plaintiffs." *Id.* at 96. Thus, the court found that the plaintiffs
28  had not alleged sufficient facts to show that "recognition of BCRA's separate status would work a

'fraud or injustice[.]" *Id.*

Here, Magistrate Judge James correctly recognized that the presumption of separateness afforded to a separate juridicial entity can be overcome and set forth the *Bancec* test. (Second Discovery Order at 3:23-26.) Magistrate Judge James considered the materials attached to the Letter Brief and held that they were "insufficient to overcome the presumption that YPF is a separate jurisdictional entity for purposes of asset discovery on an alter-ego theory." (*Id.* at 3:17-18.)

To support its request to broaden the scope of the subpoena, NML attached a complaint filed by Repsol, S.A. against Chevron in the United States District Court for the Southern District of New York, in which Repsol sued to prevent Chevron from developing energy assets pursuant to what Repsol claimed was an *ultra vires* memorandum of understanding between Chevron and YPF. In support of its complaint, Repsol alleged that the Republic expropriated Repsol's majority interest in YPF, in violation of YPF's by-laws. (Docket No. 27-4, Letter Brief, Ex. C, (Repsol Complaint, ¶¶ 1-2, 7-9, 24-25, 42.) Repsol also alleged that the Republic "forcibly expelled [YPF's] Repsol-appointed management, and suspended the authority of [YPF's] board of directors," and "replaced "[YPF's] officers and directors with its own appointees," including the Minister of Planning and the Vice-Minister of the Economy. (Repsol Complaint ¶ 5, 42.) None of those allegations, made by a non-party to this dispute, suggest that the Republic then "interfere[d] in and dictate[d]" YPF's daily business decisions. *Cf. EM, Ltd.*, 800 F.3d at 93.

NML also attached a press release that announced the fact that YPF had signed the MOU at issue in the *Repsol* litigation with Chevron. However, that press release does not include any facts that provide a colorable basis to believe that YPF is the Republic's alter-ego. (Docket No. 27-5, Letter Brief, Ex. D.) NML also references a *New York Times* article regarding the Republic's decision to "seize control" of YPF, but that article also does not include any facts that provide a colorable basis that YPF is the Republic's alter-ego. *See Argentina to Seize Control of Oil Company*, N.Y. Times, Apr. 16, 2012 (available at http://www.nytimes.com/2012/04/17/business/global/html, last visited Nov. 30, 2015). Even if Magistrate Judge James incorrectly applied a heightened standard to determine whether NML should be permitted to obtain discovery

6

1 about whether YPF is the Republic's alter-ego, the Court finds that these materials would not
2 provide a colorable basis to obtain discovery from Chevron on that issue.[1]

3       Accordingly, the Court AFFIRMS the Discovery Order.

4       **IT IS SO ORDERED.**

5 Dated: December 1, 2015

                                            JEFFREY S. WHITE
                                            United States District Judge

---

[1] Finally, to support its argument that Judge James unduly limited the scope of the subpoena, NML refers the Court to *Aurelius Capital Master Ltd. v. Republic of Argentina*, 589 Fed. Appx. 16, 18 (2d Cir. 2014). (*See* Docket No. 40, Letter Brief, Ex. A.) To the extent NML argues that Judge James should have issued a broader subpoena, based on the record, the Court concludes that Judge James did not abuse her discretion to limit the subpoena to documents relating to the Republic.